UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------
In re:                                         )
                                               )
VIRGINIA SCOTT DEVLIN,          )     CASE NO. 06-30195 (ASD)
                                               )
         Debtor                           )     CHAPTER 11
----------------------------------------------------
VIRGINIA SCOTT DEVLIN,          )
                                               )
         Plaintiff                         )
v.                                            )     ADV. PRO. NO.  06-3168
                                               )
NORTHEAST MORTGAGE      )
CORPORATION                      )
and                                          )
OHIO SAVINGS BANK,                )
                                               )
         Defendants                    )     Re:  DOC. I.D. No. 47
----------------------------------------------------

**MEMORANDUM OF DECISION AND ORDER
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND ORDER SCHEDULING TRIAL**

Albert S. Dabrowski, Chief United States Bankruptcy Judge

### I. INTRODUCTION

Through the Complaint in this proceeding the Debtor alleges, *inter alia*, that her former spouse, aided and abetted by employees of two financial institutions, "sweetheart conned" her out of approximately $200,000.00 by stripping her of equity in real property through an illicit refinancing scheme. In the precise matter now before the Court, the two defendant financial institutions seek to avoid litigating the Complaint by a motion for summary judgment based on an alleged preclusive effect springing from the rejection of

special defenses raised by the Debtor in a prior state court foreclosure action successfully prosecuted against her by a third financial institution. For the reasons stated hereafter, the motion for summary judgment shall be denied.

## II. PROCEDURAL BACKGROUND

On February 23, 2006, the Debtor, Virginia Scott Devlin, commenced the above-captioned bankruptcy case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Complaint in this case is before this Court under somewhat unusual circumstances. It springs from the Debtor's December 19, 2006, filing of a Petition For and Notice of Removal of State Court Civil Action, seeking to remove to this Court an action brought by her then pending in the Superior Court for the State of Connecticut, Judicial District of Waterbury, against Northeast Mortgage Corporation (hereafter, "Northeast"), Ohio Savings Bank (hereafter, "Ohio Savings") and certain other individual defendants then on the State Court Complex Litigation Docket as Docket No. UWY-CV-03-0178670-S (hereafter, the "State Action"). Within the State Action the Debtor had filed on June 2, 2006, a Second Amended Complaint, dropping the individual defendants from the State Action in accordance with an order of the Superior Court. On January 18, 2007, this Court approved a Stipulated Order (Doc. I.D. No. 13) deeming, *inter alia*, the Second Amended Complaint in the State Action to be the Complaint in the present proceeding.

On March 12, 2007, the parties agreed to refer the present dispute to mediation, and on April 13, 2007, this Court approved that agreement and referred the matter to the Honorable Alan H. W. Shiff, United States Bankruptcy Judge for the District of Connecticut, for that purpose. (See Stipulation for Reference to ADR, Doc. I.D. No. 31).

The mediation, however, was unsuccessful, and the matter was restored to the active docket of this Court.

## III. DISCUSSION

### *A. The Motion for Summary Judgment.*

The matter now before the Court is the <u>Defendants Ohio Savings Bank and Northeast Mortgage Corporation's Joint Motion for Summary Judgment</u> (hereafter, the "Motion"), Doc. I.D. No. 47, in which the defendants Northeast and AmTrust Bank (as successor to Ohio Savings) (hereafter, collectively, the "Defendants") request summary judgment against the Debtor-Plaintiff as to all claims in the Complaint "for the reason that said claims are barred by the doctrines of res judicata and collateral estoppel . . . ." Motion, p. 1. The Motion is based on the alleged preclusive effect arising from determinations made in connection with two special defenses (hereafter, the " Special Defense(s)"), and on other defenses which allegedly could have been made by the Debtor, in a prior mortgage foreclosure proceeding in Connecticut state court, commenced and prosecuted by Chase Manhattan Mortgage Corporation (hereafter, "Chase") against Devlin, as to real property at 172 Wood Creek Road, Bethlehem, Connecticut (hereafter, the "Property"), in which a judgment of foreclosure was entered in favor of Chase (hereafter, the "Foreclosure Action") .

There is no question that preclusion principles apply in bankruptcy proceedings. <u>Grogan v. Garner</u>, 498 U.S. 279, 285-91 (1991). Under the Full Faith and Credit Doctrine, as codified by 28 U.S.C. § 1738, a federal court is required to give a state court judgment the same preclusive effect as would a sister court of the judgment state. <u>Allen v. McCurry</u>,

449 U.S. 90, 96 (1980).  In the instant matter the Court must look to *Connecticut* law to determine whether the Connecticut state courts would estop the Debtor from contesting the subject determinations of the Superior Court in the Foreclosure Action. <u>Marrese v. American Academy of Orthopaedic Surgeons</u>, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331 - 1332 (1985).

Res judicata precludes relitigation "if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." <u>EDP Med. Computer Sys., Inc. v. United States</u>, 480 F.3d 621, 624 (2d Cir. 2007) (internal citations omitted). Under Connecticut law, "[a] judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose." <u>Connecticut Natural Gas Corp. v. Miller</u>, 239 Conn. 313, 322 (1996). And under Connecticut law, a

> "transactional test" has been adopted "as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata." [T]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction . . . out of which the action arose . . . .  In applying the transactional test, we compare the complaint in the second action with the pleadings and judgment in the earlier action . . . ".

<u>Delahunty v. Massachusetts Mutual Life Ins. Co.</u>, 236 Conn 582, 590 (1996) (emphasis added, internal quotation marks omitted).

"Collateral estoppel expresses . . . the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." <u>Gladysz v. Planning</u>

**4**

and Zoning Com'n of Town of Plainville, 256 Conn. 249, 260 (2001) (citations and internal quotation marks omitted).

> Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment.
>
> An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered.

Jackson v. R.G. Whipple, Inc., 225 Conn. 705, 714-15 (1993) (citations, quotation marks and emphases omitted).

In the Foreclosure Action, Chase, following its purchase of the mortgage on the Property from Ohio Savings, successfully sought to foreclose upon the Property following payment default by Devlin and her spouse, Manuel Machado. In defending against that foreclosure, Devlin pleaded the two Special Defenses. The first Special Defense "alleges merely that Northeast was aware of the approximately $600 discrepancy in income [in the mortgage application]," Chase Manhattan Mortgage Corp., v. Machado, 83 Conn. App. 183, 188 (2004) (Motion, Exhibit C5, at. 5). In addition, the Connecticut Appellate Court observed that while she alleged that "Chase had constructive notice of the alleged fraud that was committed against her by her husband and . . . Northeast," "[Devlin] *did not allege* any specific facts showing that the original mortgagee, Northeast, knowingly participated in any fraud against her." Id. at 187,189 (emphasis added). Noting that "a spouse's fraud

5

in inducing a spouse to execute a mortgage 'does not invalidate it as against the mortgagee, unless the mortgagee in some way participated in or knew of the fraud," id. at 189, that court affirmed the lower court's ruling rejecting the first defense.

Devlin's second Special Defense, "that she was compelled and coerced into signing the promissory note as a result of acts and threats of her husband," *id*., was rejected on a similar basis. As the Connecticut Appellate Court noted:

> As with [Devlin's] claim of fraud, she failed here to *allege* that *Chase* participated in or knew of the alleged duress. [Devlin] *alleged* only that she signed the promissory note under duress caused by her husband's conduct. We will not invalidate a mortgage agreement against a mortgagee unless it participated in the alleged duress or had reason to know of its existence.

Id. at 190 (emphasis added).

The seven count Complaint now before this Court seeks damages based on:

(i) a violation of Connecticut's Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a (hereafter, "CUTPA") (Count One),[1]

(ii) Misrepresentations (Count Two),

(iii) Emotional Distress (Count Three),

---

[1] "It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the 'cigarette rule' by the federal trade commission for determining when a practice is unfair: (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise--in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. CUTPA reflects a public policy that favors remedying wrongs that may not be actionable under other bodies of law. It is, therefore, not necessary to find. . . [the Defendant] liable for some underlying actionable wrong in order to support a CUTPA claim. A violation of CUTPA may be established by showing either an actual deceptive practice, ... or a practice amounting to a violation of public policy." *Willow Springs Condominium Association, Inc. v. Seventh BRT Development Corp. et al.*, 245 Conn. 1, 43 (1998) (citations and internal quotation marks omitted).

6

(iv) Unjust Enrichment (Count Four),[2]

(v) Fraud and Conspiracy to Commit Fraud (Count Five),

(vi) Theft and Conspiracy to Commit Theft (Count Six), and

(vii) Conversion and Conspiracy to Commit Conversion (Count Seven).[3]

Distilled to its essence, the Complaint alleges Devlin to be the victim of a "sweetheart con," perpetrated by Manuel Machado to whom she was briefly married, and who by fraud, threats[4], and coercive conduct, *aided, abetted and assisted by employees of Northeast[5] and Ohio Savings[6]*, and a lawyer,[7] stole approximately $200,000.00 from her by stripping her equity from certain real property through a refinance.

---

[2] "A right of recovery under the doctrine of unjust enrichment is *essentially equitable*, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him *at the expense of another.*" Providence Electric Co., Inc. v. Sutton Place, Inc., 161 Conn. 242, 246 (1971) (internal citations omitted) (emphasis supplied). "It is clear that in order to recover on the basis of unjust enrichment, it is necessary for a plaintiff to demonstrate two aspects of the transaction. First, it must be shown that the defendant was benefitted; that is, he has received something of value. And second, it must be shown that the benefit was unjust; that it was not paid for by the defendant, *to the detriment of the plaintiff.*" Id. (emphasis supplied).

[3] Conversion under Connecticut law is an unauthorized assumption and exercise of the right of ownership over property belonging to another, to the exclusion of the owner's rights. See, e.g., Aetna Life and Cas. Co. v. Union Trust Co., 230 Conn. 779, 790, 646 A.2d 799, 804 (1994).

[4] Including an allegation that Machado "was systematically poisoning" her. (Complaint, ¶ 15.)

[5] The Complaint identifies the Northeast employees as Andrew Jordan and Chris Whitzig, alleging that Machado "had both professional and personal relationships" with them. (Complaint, ¶ 14.)

[6] The Complaint identifies Walter B. Hrabstock as an underwriter for Ohio Savings who maintained an office at Northeast, Complaint, ¶ 25, and further alleges "because [he] worked side by side with Messrs. Jordan and Whitzig [see footnote 5, supra], he was aware of the purpose of the loan, the problems with the loan, and the fact that Northeast and Ohio Savings Bank were agreeing to issue the loan which the borrowers could not hope to repay." (Complaint, ¶ 26.)

[7] The Complaint also alleges that shortly after their marriage, Machado, "assisted by a lawyer with whom he had a pre-existing relationship, convinced [the Debtor], in her impaired condition [due to her being poisoned], to deed [the Property], for no consideration, to herself and Mr. Machado, as tenants in common." (Complaint, ¶ 16.)

In the Complaint, the Debtor does not challenge the validity of the mortgage or the judgment of foreclosure obtained by Chase. Rather she seeks to adjudicate legal claims for damages against Northeast and Ohio Savings for their alleged wrongdoing, a liability not assigned to Chase. More specifically, the Complaint alleges that Northeast and Ohio Savings, *inter alia*, "engaged in independent wrongdoing for their own financial gain" (Complaint, ¶ 6), *and*, through specifically named employees (see footnotes 5 and 6) "facilitated and materially assisted Mr. Machado's con, by conspiring, aiding and abetting, and otherwise participating in his fraud, theft and other illegal acts." Id. These allegations were not fully and fairly litigated, submitted for determination, or finally decided in the Foreclosure Action as to Northeast, Ohio Savings, or Chase.

The Defendant's assertion that the Debtor is precluded from prosecuting the Complaint because all the allegations in the Complaint *could have been pursued as additional special defenses*, or otherwise raised, in the Foreclosure Action, has no merit as Connecticut is a permissive counterclaim jurisdiction. See Connecticut Practice Book §§ 10-10[8] (permissive counterclaims) and 10-54[9] (same); Hansted v. Safeco Ins. Co. of

---

[8]Connecticut Practice Book § 10-10 provides: "Supplemental pleadings showing matters arising since the original pleadings may be filed in actions for equitable relief by either party. In any action for legal or equitable relief, any defendant may file counterclaims against any plaintiff and cross claims against any codefendant provided that each such counterclaim and cross claim arises out of the transaction or one of the transactions which is the subject of the Plaintiff's complaint; and if necessary, additional parties may be summoned in to answer any such counterclaim or cross claim. A defendant may also file a counterclaim or cross claim under this section against any other party to the action for the purpose of establishing that party's liability to the defendant for all or part of the plaintiff's claim against that defendant."

[9]Connecticut Practice Book § 10-54 provides: "In any case in which the defendant has either in law or in equity or in both a counterclaim, or right of setoff, against the plaintiff's demand, the defendant may have the benefit of any such setoff or counterclaim by pleading the same as such in the answer, and demanding judgment accordingly; and the same shall be pleaded and replied to according to the rules governing complaints and answers. See CGS §§ 52-139 and 52-142."

**8**

America, 19 Conn. App. 515, 520 n.4, 562 A.2d 1148 (Conn. App. 1989) ("Connecticut does not have a compulsory counterclaim rule"); Promotion Fulfillment v. Foster, Morgan & Clark, Inc., No. CV 960153022S, 1997 WL 261015, at *1 (Conn. Super. May 13, 1997) ("Connecticut . . . is a permissive counterclaim jurisdiction"); Battista v. DeNegris, No. CV93-0525774, 1994 WL 530165, at *1 (Conn. Super. Sept. 16, 1994) (same); see also 1 W. Horton & K. Knox, Connecticut Practice Series, Connecticut Superior Court Civil Rules § 10-10 at p. 467 (2008 Ed.). In a so-called "permissive" counterclaim state such as Connecticut, res judicata does not preclude a plaintiff who did not assert counterclaims as a defendant in an initial action from commencing a subsequent action arising from the same facts against the original plaintiff to assert such claims. Promotion Fulfillment, 1997 WL 261015, at *1.

> [W]e live for better or worse in a so-called permissive counterclaim state, see P.B. 116 [currently Connecticut Practice Book § 10-10], so that the plaintiff's claim is not barred by the doctrine of res judicata. In other words it is fair to say to a plaintiff that if you bring suit on a claim and force a defendant thereby into court and litigate that claim, we won't allow you to bring another suit against the same party on an aspect of the claim that could have been litigated in the first suit. It is quite another thing to say to a defendant who is forced to litigate not by his own choosing that you must bring any counterclaim you could have brought against the plaintiff (in the forum and at the time the latter has chosen) or be forever barred from bringing that claim. That wouldn't be fair.

Battista, 1994 WL 530165, at *1.

The Defendants also suggest that "additional devastating admissions Plaintiff has made in these proceedings" support their request. Memorandum of Law in Support of Defendants . . . Joint Motion for Summary Judgment, p. 2) (hereafter, the "Defendants' Memorandum of Law"), Doc. I.D. No. 47-2. See also Defendants' Joint Reply to Plaintiff's

9

Opposition to Defendants' Joint Motion for Summary Judgment, Part I, Doc. I.D. No. 83; and in response, Plaintiff's Surreply in Further Opposition to Defendants' Joint Motion for Summary Judgement, Doc. I. D No. 93. The Defendants, in effect, argue that the alleged "devastating admissions," particularized in the Defendants' Memorandum of Law at pages 14 -19 (citing, *inter alia,* certain deposition testimony of the Debtor admitting she knowingly made false representations to the defendants), impose a conduct-related disability (unclean hands) on the Debtor fatal to the Complaint. (See Defendants' Memorandum of Law at page 28).[10] Nevertheless, it is clear that the Debtor claims that at the time she made these false statements she was suffering from mental and physical disabilities resulting from Machado's attempts to poison her as well as his coercive conduct. While the doctrine of "unclean hands" is potentially in play in this proceeding, her alleged "unclean hands" is not a material factor at this time in connection with this Motion.

### IV. CONCLUSION

---

[10]In the Defendants' Memorandum of Law, for these same reasons, the Defendants assert that the Debtor-Plaintiff's claims "lack substantive merit as a matter of law and should be summarily *dismissed.*" Defendants' Memorandum of Law, p. 2 (emphasis added).
Fed. R. Civ. P. 12(b) provides, in part:
> [A] party may assert the following defenses . . . *by motion*:
> ****
> (6) failure to state a claim upon which relief can be granted . . . .

(emphasis added).
Because the relief requested in the Motion is limited to summary judgment pursuant to Fed. R. Civ. P. 56, the Defendants' Local Rule 56(a)1 Statement , Doc. I. D. No. 47-3 (setting forth in separately numbered paragraphs a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried) does not list the purported admissions as undisputed material facts, and neither the Motion nor the Defendants' Memorandum of Law reference Fed. R. Civ. P. 12 (b), the Court does not feel at liberty to address the Motion as a Rule 12(b)(6) request to dismiss designed to test the legal sufficiency of a complaint.
However, noting that on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he issue is not whether a plaintiff will ultimately prevail but whether [she] is entitled to offer evidence to support [her] claims," Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686 (1974), and guided by the "plausibility" standard of Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007), the claims in the Complaint appear to support a plausible basis for an entitlement to relief under the each of the seven counts set forth in the Complaint at least as to Northeast.

Case 06-03168    Doc 96    Filed 01/05/10    Entered 01/07/10 14:44:19    Desc Main
Document      Page 11 of 12

A review of all material submitted in support of and in opposition to the Motion establishes no basis for issue preclusion in this matter. Accordingly, the Motion must be denied.

### V. ORDER DENYING MOTION AND SCHEDULING TRIAL

In accordance with the above,

**IT IS HEREBY ORDERED** that the Motion is **DENIED**, and

**IT IS FURTHER ORDERED** that trial of this Adversary Proceeding shall commence on Monday, April 19, 2010 at 10:00 AM, at the United States Bankruptcy Court, 450 Main Street (7th Floor), Hartford, Connecticut, and

**WHEREAS IT PRESENTLY APPEARS** to the Court that many material facts relevant to this Adversary Proceeding are undisputed, compare Defendants' Local Rule 56(a)1 Statement with Plaintiff's Local Rule 56(a)2 Statement, that additional relevant facts appear susceptible to stipulation, and it being in the interests of judicial economy and the prompt resolution of this proceeding,

**IT IS FURTHER ORDERED** that on or before Friday, March 26, 2010, counsel for the parties shall confer in good faith, and file such Stipulation(s) and/or Agreement(s) as are appropriate regarding facts not in dispute, and regarding documents to be admitted in evidence in full by agreement, and

**IT IS FURTHER ORDERED** that the Amended Pretrial Order (Doc. I.D. No. 34) remains in full force and effect except as to the rescheduled trial date as set forth herein, and

**IT IS FURTHER ORDERED** that this Order enters without prejudice to any party to

the Complaint to seek an advancement, extension, or continuance of the trial date (or other date) set forth herein, for cause.

Dated: January 5, 2010                                                         BY THE COURT

*Albert S. Dabrowski*
Chief United States Bankruptcy Judge